## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ROBERT LEE PETRY,

*Plaintiff*,

v.

RAUSCH STURM, LLP,

*Defendant*.

**Civil Action No.: 0:25-cv-04352-PAM-EMB**

**VERIFIED FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

For his Verified Complaint against Defendant Rausch Sturm, LLP ("**Rausch**" or the "**Firm**"), a Wisconsin limited liability partnership, Plaintiff Robert Lee Petry, an individual, through undersigned counsel, respectfully states and alleges as follows:

### NATURE OF THE ACTION

1.      This action arises under the Fair Debt Collection Practices Act, as amended, §§ 801 – 819, 15 U.S.C. §§ 1692 – 1692p ("**FDCPA**"); its implementing regulation, 12 C.F.R. Part 1006 (*DEBT COLLECTION PRACTICES (REGULATION F)*) ("**Regulation F**" or "**Reg. F**"); Minnesota's unauthorized practice of law (UPL) statute, Minn. Stat. § 481.02; and Minnesota's mini-FDCPA, Minn. Stat. § 332.37.

### PARTIES

2.      Plaintiff Robert Petry is a natural person residing in the City of Oak Grove, County of Anoka, State of Minnesota, and is a "consumer" within the meaning of FDCPA § 803(3).[1]

3.      Defendant Rausch—a Wisconsin limited liability partnership—is a law firm-cum-collection agency operating from an address, according to a civil complaint ("**S&C**") putatively

---

[1] 15 U.S.C. § 1692a(3).

served upon Mr. Petry, *State Court Record*, **Exhibit F**, of 7300 147th Street West, Suite 307, Apple Valley, Minnesota 55124, and is a "debt collector" within the meaning of FDCPA § 803(6).[2] According to the Minnesota Secretary of State, Rausch's registered address is 2780 Snelling Avenue North, Suite 101, Roseville, Minnesota 55113; its registered agent is Corporation Service Company ("**CSC**"); and the individual contact for its agent is Elizabeth Garcia, 300 North Executive Drive, Suite 200, Brookfield, Wisconsin 53005. *Minnesota Secretary of State Business Records*, **Exhibit A**, at A-4.

<u>**JURISDICTION AND VENUE**</u>

4.      This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as the action arises under the laws of the United States—*viz.*, the FDCPA and its implementing regulation, Reg. F—and subject-matter jurisdiction is authorized pursuant to FDCPA § 813(d).[3] To the extent this action implicates state law doctrines, the Court has supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a), as any state law claims are part of the same case or controversy.

5.      This Court has general personal jurisdiction over the Defendant because the Defendant operates, transacts business, and maintains an office (physical place of business) in the State of Minnesota.

6.      This Court has specific personal jurisdiction over Defendant Rausch because it attempted to collect a debt it alleged Mr. Petry, a Minnesota resident, owed Discover Bank (" **Discover**"), for goods and services rendered in Minnesota; purported to sue Mr. Petry in Anoka County District Court in Minnesota; and purported to effectuate service of process upon Mr.

---

[2] § 1692a(6).
[3] § 1692k(d).

Petry in Minnesota; because attorneys employed by the Firm are licensed to practice law, and do so practice law, in the State of Minnesota; and because the alleged violations of the FDCPA are also violative of Minnesota law, and occurred entirely within the State of Minnesota.

7.      Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 because the Defendant operates, transacts business, and maintains an office (physical place of business) in this judicial district, and a substantial part of the events or omissions giving rise to the claims asserted against the Defendant occurred in this judicial district, and venue is authorized pursuant to FDCPA § 813(d).[4]

## FACTUAL ALLEGATIONS

### *Background*

8.      Rausch alleges Plaintiff incurred a financial obligation primarily for personal, family, or household purposes—a "debt" within the meaning of FDCPA § 803(5)[5]—owed Discover for funds Discover advanced Mr. Petry in connection with a now-closed revolving line of credit, in an approximate amount of $21,000 plus costs. *State Court Record*, **Exhibit F**, at A-26 to A-27.[6]

9.      In May 2025, Capital One Financial Corporation (NYSE:COF) acquired Discover,[7] and Plaintiff is uncertain whether or how this may affect the rights Discover previously asserted in its State Court Litigation, *infra* Paragraph 11.

---

[4] *Ibid.*

[5] § 1692a(5).

[6] *See generally* Paragraph 11, *infra*.

[7] *See, e.g.*, *Capital One Completes Acquisition of Discover* (May 18, 2025), https://investor.capitalone.com/news-releases/news-release-details/capital-one-completes-acquisition-discover [https://perma.cc/Q8B3-TFGR].

### *Defendant Not a Debt Buyer*

10.     Upon information and belief, Rausch is not acting as a debt buyer and maintains no direct ownership interest in the debt it alleges Mr. Petry owes. See, e.g., Minn. Stat. § 548.101, titled *ASSIGNED CONSUMER DEBT DEFAULT JUDGMENTS*.

### *Minnesota State Court Collection Lawsuit Allegedly Begun Sunday, November 17, 2024*

11.     **Purported service of summons and complaint**. On or about Sunday, November 17, 2024, on information and belief, through its agent for service of process ("**Process Server**"), Rausch, acting as counsel for Discover, purported to serve a civil summons and complaint ("**S&C**"), *State Court Record*, **Exhibit F**, at A-24 to A-27, upon Plaintiff at Plaintiff's home in Oak Grove, Minnesota. Thus began the "**State Court Litigation**."[8]

12.     In its efforts to effectuate personal service of the S&C upon Plaintiff, Process Server first visited the home of Plaintiff's neighbor, who messaged Plaintiff:

> That guy is looking for you!! I told him our address. Not sure what he wants. I didn't ask. None of my business I'm not exactly sure if she found out what's going on or what then he drove over into my driveway climbed up the stairs. I answered the door and said the neighbor just texted me saying u we're looking for me then that guy began to say that they want you to talk to them and negotiate and I asked him. What do you work for him or what and he says I deliver a lot of stuff for him that Company

> He was recording the whole thing as he had his phone out pointing at me

*Facebook Messenger Exchange (Plaintiff + Counsel)*, **Exhibit C**, at A-11.

13.     Once he determined the location of Plaintiff's home, Process Server met Plaintiff at the doorway, videotaping the entire service-of-process encounter via his smartphone. Plaintiff messaged counsel: "[T]he guy that delivered it told me for some reason they want me to call

---

[8] This terminology notwithstanding, Mr. Petry continues to maintain the position that the State Court Litigation never properly began. *See, e.g.*, Paragraph 29, *infra* (Mr. Petry properly raised appropriate affirmative defenses in his state court answer).

them and negotiate and I asked him. How do you know that because he says he does a lot of them for that company or something." *Facebook Messenger Exchange (Plaintiff + Counsel)*, **Exhibit C**, at A-10.

14.     Upon information and belief, Process Server is not a collector duly licensed by the Minnesota Department of Commerce, nor, to the extent Process Server was acting on behalf of another, was Process Server's employer or other principal duly licensed by the Minnesota Department of Commerce, nor does an applicable exception or exemption apply—as by extension of licensure exemptions applicable to attorneys—i.e., Rausch—by operation of Minn. Stat. § 332.32. In particular, it is Plaintiff's position any collector's license exemption applicable to Rausch did not extend to the Process Server because **(1)** he is not an attorney, and **(2)** he was not retained to act as a collector on behalf of Rausch, but merely to serve process.

15.     **Appearance of the undersigned for state-court defendant Mr. Petry**. Following this visit, Mr. Petry retained the undersigned and executed a written agreement.

16.     **Attorney communications; service of state-court answer and first amended answer**. Meanwhile, Mr. Cobb set about filing a timely answer to the S&C, and did so. On Monday, December 9, 2024, the day the answer was due, Mr. Cobb finalized and made arrangements to serve the state-court answer upon Discover, pursuant to which he emailed Mr. Ropella—in the employ of Rausch and first signatory to the S&C. Mr. Ropella did not immediately respond, so Mr. Cobb telephoned the numbers on the S&C, recording the calls. Mr. Cobb dialed (833) 917-4025 and (877) 334-1598, but discovered both to be general numbers. Finally, Mr. Cobb telephoned Mr. Ropella at the number disclosed on the signature page of the complaint—but not disclosed on the summons. The two spoke briefly by telephone, during

which time Mr. Ropella represented he had "been in court"[9]—ostensibly earlier that day—and, despite Mr. Cobb's pressing him on the issue, ***refused to email Mr. Cobb same day***, though Mr. Cobb had expressly identified the internal Rausch file number in the subject line of his email[10] and expressly indicated the ***answer was due that day***,[11] and Mr. Ropella was speaking to Mr. Cobb on a smartphone—ostensibly equipped with email capabilities. Mr. Cobb effectuated service through the mails via a trusted vendor, BK Attorney Services. Mr. Ropella responded next day by email, though he knew this was one day too late to accept service by email.[12] Mr. Cobb dutifully replied with courtesy copies of Mr. Petry's answer to the S&C and requested contact information for the other two attorney signatories to the S&C—Messrs. Boon and Adams—by email same day,[13] and served a first amended answer and follow-up reminder three (3) days later,[14] but no acknowledgement, response, or any other communication from anyone at Rausch ever came.

### Nonexhaustive Summary of FDCPA & State Law Violations

17.    The Firm's conduct and S&C violated, *inter alia*, the FDCPA.

18.    ***First***, the S&C falsely avers Discover had made prior demand for payment. *State Court Record*, **Exhibit F**, at A-26 ¶ 4. The representation that a demand has been made when no demand has been made violates the FDCPA. *1st Nationwide Collection Agency, Inc. v. Werner*, 654 S.E.2d 428, 430 (2007) ("Nationwide also falsely represented that it made a demand upon Werner to pay the alleged debt, when in fact no such demand had been made, knowingly

---

[9] *Transcript of Telephone Call*, **Exhibit E**, at A-21.
[10] *Emails (Rausch Sturm + Mr. Cobb)*, **Exhibit D**, at A-13.
[11] *Transcript of Telephone Call*, **Exhibit E**, at A-21.
[12] *Emails (Rausch Sturm + Mr. Cobb)*, **Exhibit D**, at A-14.
[13] *Id.* at A-13.
[14] *Id.* at A-14.

violating 15 U.S.C.S. § 1692e, 1692e(6)(A) and 1692e(10).").

19.    ***Second***, save for Mr. Ropella—whose direct telephone number and email address are specified on the signature page of the state-court complaint, but not the summons—the S&C omits direct telephone numbers and email addresses in violation of Minn. R. Civ. P. 11.01 (hereinafter, and with respect to other of the Minnesota Rules of Civil Procedure, "**Rule**" 11.01) (requiring "***the signer's*** address and telephone number and e-mail address") (emphasis added). Except as to Mr. Ropella, the S&C lists only general phone numbers, rather than *every* attorney's direct line, and, except as to Mr. Ropella, lists only a general email address rather than *every* attorney's direct email.[15]

20.    ***Third***, the S&C—in addition to reliance upon hip-pocket service, which tends to confuse unsophisticated consumers,[16] who often do not recognize it as the beginning of a legitimate lawsuit to which they must respond—*in toto*, appears to deliberately partly obfuscate its attorneys' contact information as a means to impede communication and hinder or delay answering suits directed at unsophisticated consumer debtor-defendants—a strategy likely calculated to improve the likelihood of obtaining default judgments, which attach to real property and can thereby become bankruptcy-proof.

21.    ***Fourth***, the S&C is oddly missing many standard headings, including nature of the action, parties, jurisdiction and venue, factual allegations, claims for relief, and prayer for relief, and contains little more information than a dunning letter, as if created algorithmically *in silico* through automated means. It does not strike the undersigned as having been drafted or

---

[15] Should the Court wish to take judicial notice, the Firm's Website also omits this information. See <u>Home</u> (*Rausch Sturm*); *Rausch Sturm Website*, **Exhibit B**, at A-6 to A-8.

[16] "We evaluate debt collection communications from the perspective of an unsophisticated consumer. *Duffy v. Landberg*, 215 F.3d 871, 873 (8th Cir. 2000)." *Klein v. Affiliated Grp., Inc.*, 994 F.3d 913, 917 (8th Cir. 2021).

reviewed with care by any attorney, raising the specter of robo-signing in violation of, *inter alia*, Rule 11, Minn. Stat. § 549.211, and the FDCPA. *See infra* Paragraphs 48 – 50. The Complaint makes clear it is the incompleteness—at times, inaccuracy—of the state court complaint and other documents that points to insufficient attorney oversight. Moreover, the Firm's argument ignores that the quality of its work in state court, in view of numerous deficiencies, becomes *even worse* if its work were carelessly drafted or reviewed by one or more attorneys.[17]

22.     **Fifth**, the S&C is missing key—yea, all—supporting documentation,[18] raising the specter of robo-signing in violation of, *inter alia*, Rule 11, Minn. Stat. § 549.211. *See infra* Paragraphs 48 – 50.

23.     **Sixth**, in seeking Mr. Petry's location information via Mr. Petry's neighbor, *supra* Paragraphs 11 – 13, the conduct of the Process Server may have generally violated FDCPA § 804,[19] and the Process Server may have improperly disclosed information prohibited thereby (e.g., as by disclosing his desire to "negotiate" with Mr. Petry, *supra* Paragraph 12).

24.     **Seventh**, in, *inter alia*, seeking to negotiate on behalf of Discover, the Process Server, and perhaps his principal, if any, may have been acting as an unlicensed collector in violation of Minnesota law. *See supra* Paragraph 14.

25.     **Eighth**, in seeking to negotiate on behalf of Discover, the Process Server may have engaged in the unauthorized practice of law in violation of Minnesota law.

---

[17] Plaintiff finds apropos analogy to the Swiss cheese model in risk analysis and risk management, or to the failure of Citibank's six-eye review process explicated at length in a Second Circuit decision involving Citibank's infamous $894 million accounting error, *In re Citibank August 11, 2020 Wire Transfers,* 520 F. Supp. 3d 390 (S.D.N.Y. 2021), *rev'd sub nom.*, *Citibank, N.A. v. Brigade Cap. Mgmt., LP*, 49 F.4th 42 (2d Cir. 2022).

[18] Undersigned counsel, for instance, in his work as creditor's counsel, typically attaches all supporting records to civil bad-debt complaints, and always reviews and verifies the same.

[19] 15 U.S.C. § 1692(b).

26.    *Ninth*, hunting down one's neighbor and dunning in person (rather than merely telephoning) on a Sunday at one's home is inconvenient, as Sunday is reserved for family (and, in fact, Mr. Petry had familial obligations).

27.    *Tenth*, in filming the encounters with Mr. Petry and his neighbor at their respective residences, it is Plaintiff's position there remains a colorable question whether the Process Server violated Minn. Stat. § 609.746 (*Surreptitious Intrusion*), and, even if not criminal, the FDCPA.

28.    *Eleventh*, concerning Mr. Ropella's December 9, 2024, telephonic interaction with Mr. Petry's counsel—Mr. Cobb—it is Plaintiff's position there remain colorable questions **(1)** whether Rausch violated the FDCPA when Mr. Ropella did not email Mr. Cobb until next day or respond to Mr. Cobb's repeated email requests for attorney contact information; and **(2)** whether Mr. Ropella had truly been in court that morning.

29.    *Twelfth*, as illustrated by the affirmative defenses Mr. Petry asserted in his state-court answer, *State Court Record*, **Exhibit F**, at A-29 to A-32, the S&C and conduct of the Firm may be viewed, *in toto*, as false, misleading, or unfair, in contravention of the FDCPA.

### *Rausch Sturm's Website*

30.    According to the research of undersigned counsel, Rausch Sturm, via its website *RauschSturm.com* ("**Website**"), neither maintains a profile page for its attorneys, nor provides an email address or direct-dial telephone number therefor, nor mentions Minnesota at all. *Rausch Sturm Website*, **Exhibit B**, at A-6 to A-8.[20] This would cause an ordinary unsophisticated consumer—the standard of FDCPA jurisprudence—consternation and confusion as to whether

---

[20] Although the Website, as of the date of the instant Complaint, mentions Minnesota, it did not as of the putative date of service of the S&C.

the firm was properly and legitimately doing business—collecting consumer debts—in

Minnesota.

### *Rausch's Pattern of Obfuscation of Contact Information*

31.    According to the research of undersigned counsel, Rausch does not, either via its

Website or in connection with its litigative practices, provide attorney profiles or direct-dial

telephone (or mobile) numbers or disclose attorney email addresses, save for one signatory, nor

does Rausch appear to maintain a Minnesota receptionist. Although the FDCPA concerns itself

with a consumer's privacy, in pursuit of state-court default judgments, collector-plaintiffs are

incentivized to hide their contact information.

### *Rausch Has to Date Remained Entirely Incommunicado*
### *and Appears to Have Abandoned Its State Court Action*

32.    Aside from his brief telephonic conversation with Mr. Ropella, undersigned

counsel never heard—not once—from the Firm or any representative of Discover or the Firm: no

one once communicated with Mr. Cobb in any capacity or for any reason or by any means,

whether in connection with the state court action or for any other reason. Nor has the Firm filed

any paperwork through the Minnesota district court's eFile and eServe (eFS) system or taken any

other step in furtherance of its state-court action. It is as if the Firm had fallen off the face of the

Earth. This in no wise is what counsel does when prosecuting a legitimate suit in good faith on

the merits.

### **PRELIMINARY MATTERS**

### *Article III Standing and Subject-Matter Jurisdiction*

I.    ***Spokeo* Does Not Vitiate Standing.**

33.    The Eighth Circuit recently explained *Spokeo*:

Standing consists of three elements. The plaintiff must have (1) suffered an injury
in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and

(3) that is likely to be redressed by a favorable judicial decision. To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms. . . . The [Supreme] Court has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.

*Bassett v. Credit Bureau Servs.*, 60 F.4th 1132, 1134 – 35 (8th Cir. 2023) (citation modified).

**A.      Concrete Injuries-in-Fact: Specific Harm Plaintiff Suffered.**

34.      **Monetary loss**. Plaintiff incurred increased attorney fees in defending against the State Court Litigation vis-à-vis a scenario in which no FDCPA violation inheres, as defense counsel must identify, analyze, and address defenses related to FDCPA violations before filing an answer or other responsive pleading or motion.

35.      **Emotional distress**. Plaintiff suffered fear, embarrassment, confusion, wasted time, annoyance, and emotional distress as a direct result of the FDCPA violations described herein.

**B.      The Violations Here at Issue Invoke the Remedial Purposes of the FDCPA.**

36.      The alleged FDCPA violations are substantive—not merely procedural—and strike at the core of the purposes for which Congress enacted the FDCPA and the harms it meant to redress—*viz.*, abusive debt collection practices:

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the

loss of jobs, and to invasions of individual privacy.

*** 

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

FDCPA §§ 802(a), (e).[21]

37.    Creditors who hire lawyers who cut corners and elide ordinary good-faith due diligence and litigative practices undermine public trust in the legal profession and credit markets, increasing the cost of credit or reducing its use. Robo-signing is a particularly nefarious scourge plaguing markets and courts alike. The S&C reads like a stock, bulk form mailing with fill-in data fields that can be printed by the score—flying in the face of careful practices courts encourage. This practice results in unfair litigative advantage inuring to the benefit of creditors, who crank out reams of complaints à la junk mail, while defense counsel must abide by rules of due diligence, conduct "an inquiry reasonable under the circumstances," Minn. Stat. § 549.211, subd. 2, ferret out FDCPA violations, and mount a defense against nebulous claims.

## II.    *Rooker-Feldman* Does Not Defeat Subject-Matter Jurisdiction.

38.    *Rooker-Feldman* does not bar the instant FDCPA claims because the state-court proceedings have not been reduced to judgment.[22]

39.    Moreover, since *Exxon,* courts have generally found FDCPA claims to be

---

[21] 15 U.S.C. §§ 1692(a), (e).

[22] The Eighth Circuit explains:

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L.Ed.2d 454 (2005), the Supreme Court specifically confined the Rooker-Feldman doctrine to "cases brought by state-court losers complaining of injuries

independent claims, not collateral attacks on the state court action. "Consequently, *Rooker-Feldman* does not bar an FDCPA claim challenging only a defendant's debt-collection practices, without challenging the validity of the state-court judgment." *Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1162 (D. Minn. 2013).[23] This Court elaborated some years ago:

> Because an FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of the creditor, a claim under the FDCPA is an "independent claim" from a state court action to collect a debt, and Federal courts have jurisdiction over the case.

*Wyles v. Excalibur I, LLC,* No. 05-cv-2798 (JRT/JJG), 2006 WL 2583200, at *2 (D. Minn. Sept. 7, 2006).

40.    Here, Plaintiff complains only of the debt-collection practices of Rausch and does not collaterally attack the state-court proceedings.

### *The FDCPA Applies to Debt Collection Litigation, Though Formal Pleadings Are Exempt from Certain Notice Requirements*

41.    It is hornbook law that the FDCPA applies to all litigation activity,[24] though pleadings are generally exempt from validation[25] and—by rule[26]—the notice requirements of

---

caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."
*Caldwell v. DeWoskin*, 831 F.3d 1005, 1008 (8th Cir. 2016)

[23] *Accord*, *Hageman v. Barton*, 817 F.3d 611, 616 (8th Cir. 2016); *Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437 (8th Cir. 2015).

[24] *See, e.g.*, *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1298 (11th Cir. 2015) ("[T]he Supreme Court expressly held that the FDCPA applies to the litigating activities of [debt-collector] lawyers[,]" *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)) (internal quotations omitted); *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 696 (8th Cir. 2017) ("The Act does apply to lawyers engaged in litigation.").

[25] "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)." FDCPA § 809(d) (15 U.S.C. § 1692g(d)).

[26] "Disclosures under paragraphs (e)(1) and (2) of this section are not required in a formal pleading made in connection with a legal action." 12 C.F.R. § 1006.18(e)(4). (Paragraph (e)(1)

FDCPA § 807(11)[27] (the mini-Miranda).

42.    The S&C and, to the extent extant and relevant to the case at bar, other litigation documents are "communications" within the meaning of FDCPA § 803(2).[28]

43.    Moreover, though, per counsel's research, neither this Court nor the Eighth Circuit has taken up the issue, and there is a circuit split, it is Plaintiff's position statements made to a consumer's counsel are actionable under the FDCPA. *See, e.g.*, *Bishop v. Ross & Bonan, P.A.*, 817 F.3d 1268, 1272 (11th Cir. 2016) ("We join the Third, Fourth, and Seventh Circuits in holding that a debt-collection notice sent to a consumer's attorney is just such an 'indirect' communication[]" under FDCPA § 803(2).);[29] *Bishop*, 817 F.3d at 1273 ("We hold that a debt-collection letter sent to the consumer's attorney is a 'communication with a consumer' within the meaning of § 1692g.").[30]

### *Vicarious, or Respondeat Superior, Liability*

44.    The acts or omissions of any person acting as an agent for the Defendant, as principal, whether Defendant classifies or characterizes such agent as an employee or independent contractor, who communicated directly or indirectly with Plaintiff or was involved in handling any aspect of Plaintiff's account with Defendant, were committed within the time and space limits of the agency relationship with Defendant; were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant; and

---

codifies the mini-Miranda, and, under subparagraph (e)(2), "the debt collector must disclose that the communication is from a debt collector.")

    [27] 15 U.S.C. § 1692e(11).

    [28] § 1692a(2).

    [29] FDCPA § 803(2) corresponds to 15 U.S.C. § 1692a(2) ("The term '**communication**' means the conveying of information regarding a debt directly ***or indirectly*** to any person through any medium.") (emphases added).

    [30] FDCPA § 809 corresponds to 15 U.S.C. § 1692g.

were motivated to benefit Defendant. These acts or omissions were performed while in the employment, or other agency, of Defendant and were within the scope of that relationship or within the authority delegated to the employee or other agent.

45.    Accordingly, Defendant is vicariously liable to Plaintiff by operation of the doctrine of respondeat superior for any intentional or negligent acts, errors, or omissions of its agents that give rise to liability of any agent to Plaintiff.

### CAUSES OF ACTION

### COUNT 1
### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. §§ 1692 – 1692p

46.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

#### *Inadequate, Missing, False, or Misleading Contact Information*

47.    The Firm's obfuscating its contact information—email addresses and direct phone numbers[31]—separately and *in toto*, violates Rule 11.01 and—pertinent here—*inter alia*, FDCPA §§ 807 (false or misleading representations),[32] 807(10) (prohibiting "use of any false representation or deceptive means to collect or attempt to collect any debt"),[33] and 808 (prohibiting "unfair . . . means to collect or to attempt to collect any debt").[34]

#### *Lack of, or Inadequate, Review and Due Diligence: Robo-Signing & Rent-a-License*

48.    The Virginia Court of Appeals recently opined robo-signing remains a scourge:

Peter A. Holland, *The One Hundred Billion Dollar Problem in Small Claims Court: Robo-Signing and Lack of Proof in Debt Buyer Cases,* 6 J. Bus. & Tech. L. 259, 268-69 (2011). But even for debt buyers acting in good faith, documentation

---

[31] *See supra* Paragraphs 19, 31.

[32] 15 U.S.C. § 1692e.

[33] § 1692e(10).

[34] § 1692f.

is only a problem if the debt buyer is in fact forced to prove it owns a debt. "Empirical evidence shows that many debt buyers using a high volume of lawsuits as a component of their recovery strategy rely heavily on the assumption that consumers often fail to show up to contest the case," allowing debt buyers to win default judgments. *Taylor*, 72 N.E.3d at 578-79 (quoting Note, *Improving Relief from Abusive Debt Collection Practices,* 127 Harv. L. Rev. 1447, 1449 (2014)) [hereinafter *Improving Relief*]); *see also id.* at 578 (observing that the debt buying industry is "dependent in large part on the acquiescence, ambivalence, or ignorance of consumers").

*Green v. Portfolio Recovery Associates*, 897 S.E.2d 275, 282 (Va. Ct. App. 2024).

49.    The *Indiana Law Review* describes rent-a-license schemes:

Lawyer rent-a-license schemes are highly attractive to prospective clients who have basic run-of-the-mill legal issues. Although they are posed as an inexpensive, straightforward and simplified alternative to standard legal practices, these schemes are often fraught with conduct that violates professional conduct rules which results in harm to clients. With largely parallel fact patterns, . . . lawyers [often] partner[] with out of state legal service groups and knowingly utilized non-lawyer assistants to solicit prospective clients, evaluate their legal claims, facilitate the signing of representative agreements and directly handle attorney's fees . . . .[35]

50.    The S&C is devoid of standard sections and does not appear to have been carefully drafted by a lawyer, raising—especially in view of other omissions discussed *supra*—the specter of robo-signing, insufficient involvement of counsel, and eliding due diligence in violation of, *inter alia*, Minn. R. Civ. P. 11, Minn. Stat. § 549.211, and FDCPA §§ 807 (false or misleading representations),[36] 807(9) ("false impression as to . . . source, authorization, or approval"),[37] 807(10) ("false representation or deceptive means to collect or attempt to collect any debt"),[38] and 808 (unfair practices).[39] *See supra* Paragraphs 18 – 29.

---

[35] G. Michael Witt, *2017 Survey of Indiana Lawyer Discipline Decisions*, 51 Ind. L. Rev. 1181, 1204 (2018), https://mckinneylaw.iu.edu/practice/law-reviews/ilr/pdf/vol51p1181.pdf [https://perma.cc/9Z6H-NDSF].

[36] 15 U.S.C. § 1692e.

[37] § 1692e(9).

[38] § 1692e(10).

[39] § 1692f.

*False or Misleading Statements*

51.    The State Court Litigation includes one or more false or misleading statements by the Firm, including, *inter alia*, as described in Paragraph 18, *supra*, which violates, *inter alia*, Minn. R. Civ. P. 11, Minn. Stat. § 549.211, and, at least, FDCPA §§ 807 (*False or Misleading Representations*),[40] 807(6)(A) (false implication a debtor may "lose any claim or defense to payment of the debt"),[41] 807(10) ("false representation or deceptive means to collect or attempt to collect any debt")[42] and 808 (unfair practices).[43]

*Improper Purpose*

52.    The S&C was interposed for an improper purpose. In particular, Process Server's seeking to negotiate with Mr. Petry's neighbor and, later, Mr. Petry himself, evinces intent, not to litigate the case and obtain a money judgment, but to bring Mr. Petry to heel, and to the bargaining table.

53.    In view of these numerous violations, and the haphazard and careless way in which the Firm prosecuted its state-court case, Plaintiff believes the S&C was interposed for an improper purpose in derogation of, *inter alia*, Minn. R. Civ. P. 11, Minn. Stat. § 549.211, and, at least, FDCPA §§ 807(5) ("threat to take any action . . . that is not intended to be taken"),[44] 807(10) ("false representation or deceptive means to collect or attempt to collect any debt"),[45] and 808 (unfair practices).[46] *See generally supra* Paragraphs 19 – 22 (abusively serving ill-

---

[40] § 1692e.
[41] § 1692e(6)(A).
[42] 15 U.S.C. § 1692e(10).
[43] § 1692f.
[44] § 1692e(5) (serving the S&C initiated litigation with no intention to follow through).
[45] § 1692e(10).
[46] § 1692f.

prepared and ill-conceived state-court suits, cutting corners and eliding due diligence in bad-faith

pursuit of default judgments against debtors with home equity in debt and at risk of bankruptcy;

inaccurate documentation, breezy S&C); and 19 and 20 (unusual lengths to which the Firm has

gone to hide the contact information of attorneys signing pleadings and legal process).

54.     At bottom, Plaintiff alleges the S&C is little more than a barebones dunning letter,

and the Firm initiated the State Court Litigation not for the purpose of litigating the case in good

faith on the merits, devoting adequate resources thereto, but as a bargaining ploy to obtain a

quick payoff, or for the purpose of obtaining a default judgment while eliding its disclosure and

due diligence responsibilities.

55.     Plaintiff further avers the Firm has done this as a matter of course as a pattern of

litigation abuse.

### *Violations in Sum*

56.     Because, *inter alia*, Defendant deliberately and improperly obfuscated its contact

information in violation of the Minnesota Rules of Civil Procedure; made one or more false

statements or misleading statements; improperly reviewed the S&C and other litigation

documents; did not cooperate with Mr. Cobb in disclosing attorney contact information or timely

consenting to service by email (having not yet filed via eFS); and directed or permitted its

agent—the Process Server—to negotiate in its stead (UPL), act as an unlicensed collector, film

Plaintiff and Plaintiff's neighbor, disclose Plaintiff's debt to Plaintiff's neighbor, and serve

process on a Sunday; Defendant violated, *inter alia*, various FDCPA provisions prohibiting "any

false, deceptive, or misleading representation or means in connection with the collection of any

debt"[47] and "unfair . . . means to collect or to attempt to collect any debt,"[48] including, but not limited to, FDCPA §§ 804, 805(a)(1), 807, 807(5), 807(6)(A), 807(9), 807(10), and 808;[49] Minnesota's unauthorized practice of law (UPL) statute, Minn. Stat. § 481.02; and Minnesota's mini-FDCPA, Minn. Stat. § 332.37.

### No BFE Defense

57.    It is Plaintiff's position the bona fide error (BFE) defense, or safe harbor, of FDCPA § 813(c),[50] does not apply, as Rausch cannot point to "maintenance of [any] procedures reasonably adapted to avoid any such error," *ibid.*, such as, *inter alia*, the omission of email addresses and provision of a nonspecific, general phone number, issuing false or misleading statements, or employment of a Process Server as its negotiating representative. Quite the contrary: through its public presence and course of litigation conduct, the Firm appears to *intentionally*, *deliberately* maintain and implement policies and procedures *expressly designed* to ensure **noncompliance as a litigative advantage and strategy**.

### Damages

58.    The acts or omissions of Defendant or its agents are violative of the FDCPA, and Plaintiff is therefore entitled to compensatory damages pursuant to FDCPA § 813(a)(1),[51] statutory damages not to exceed $1,000.00 pursuant to FDCPA § 813(a)(2)(A)[52] (or, in the alternative, to the extent the Complaint is amended to press class claims, FDCPA §

---

[47] FDCPA § 807, 15 U.S.C. § 1692e.

[48] FDCPA § 808, 15 U.S.C. § 1692f.

[49] 15 U.S.C. §§ 1692b, 1692c(a)(1), 1692e, 1692e(5), 1692e(6)(A), 1692e(9), 1692e(10), and 1692f.

[50] § 1692k(c).

[51] § 1692k(a)(1).

[52] § 1692k(a)(2)(A).

813(a)(2)(B)[53]), and costs and a reasonable attorney's fee pursuant to FDCPA § 813(a)(3)[54] and

Fed. R. Civ. P. 54.

## COUNT 2
## UNAUTHORIZED PRACTICE OF LAW, MINN. STAT. § 481.02

59.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint

as though fully stated herein.

60.     Minnesota law proscribes any person, "by word, sign, letter, or advertisement, to

hold out as competent or qualified to give legal advice or counsel." Minn. Stat. § 481.02, subd. 1.

61.     The Process Server, not licensed to practice law, sought to negotiate with Mr.

Petry and, before him, Mr. Petry's neighbor—i.e., to represent Discover or its attorneys, Rausch.

Paragraphs 12 – 13.

62.     The Process Server is not a "member[] of the bar of Minnesota admitted and

licensed to practice as attorney[] at law" within the meaning of § 481.02, subd. 1.

63.     This conduct does not fall within the purview of permitted actions set forth in §

481.02, subd. 3.

64.     Mr. Petry was injured by this conduct, *inter alia*, when the Firm sought to

persuade him he should pay the debt rather than defending its S&C.

65.     Accordingly, pursuant to § 481.02, subd. 8, by operation of Minn. Stat. § 8.31,

subd. 3a, Plaintiff is entitled to recover damages—and may seek exemplary damages (punitive

damages) under state law—together with costs and disbursements, including costs of

investigation and reasonable attorney's fees, and receive other equitable relief as determined by

the Court.

---

[53] § 1692k(a)(2)(B).
[54] § 1692k(a)(3).

## COUNT 3
## MINNESOTA'S MINI-FDCPA,
## MINN. STAT. § 332.37 (PROHIBITED PRACTICES)

66.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

67.    Each and every violation of the FDCPA also derivatively violates Minn. Stat. § 332.37(a)(12) (making it unlawful to "violate any of the provisions of the Fair Debt Collection Practices Act of 1977").

68.    The Firm's obfuscating its contact information and making one or more false or misleading statements, separately and *in toto*, violates Minn. Stat. § 332.37(a)(22) (forbidding a debt collector to "falsify any collection agency documents with the intent to deceive a debtor"), in addition to derivative FDCPA liability under § 332.37(a)(12).

69.    The above-referenced acts or omissions of Defendant or its agents are violative of Minn. Stat. § 332.37, and Plaintiff is therefore entitled to special damages—including compensatory, incidental, and consequential damages—and general damages, and may seek exemplary damages (punitive damages) under state law, to be proven at trial, plus attorney's fees and costs and disbursements, together with pre- and post-judgment interest and all other relief the Court deems just.

## <u>TRIAL BY JURY</u>

Pursuant to U.S. Const. amend. VII and Fed. R. Civ. P. 38, Plaintiff is entitled to, and hereby respectfully demands, a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to enter judgment awarding Plaintiff, with respect to FDCPA violations, actual damages pursuant to FDCPA § 813(a)(1),[55] statutory damages of $1,000.00 pursuant to FDCPA § 813(a)(2)(A)[56] (or, in the alternative, the extent the Complaint is amended to press class claims, statutory damages pursuant to FDCPA § 813(a)(2)(B)[57]), costs and a reasonable attorney's fee pursuant to FDCPA § 813(a)(3)[58] and Fed. R. Civ. P. 54, and such other relief as the Court in its discretion may provide; and, with respect to state-law violations, avoiding double recovery, special damages—including compensatory, incidental, and consequential damages—general damages, and exemplary damages (punitive damages), to be proven at trial, plus attorney's fees and costs and disbursements, together with pre- and post-judgment interest and all other relief the Court deems just.

Dated: December 18, 2025

Respectfully submitted,

**COBB CHAUCER PLLC**

*s/ Jeremy Judson Cobb*
Jeremy Judson Cobb (Reg. No. 316441)
400 South Fourth Street, Suite 401-232
Minneapolis, Minnesota 55415
(763) 516-6231
*jjcobb@umich.edu*

*Counsel for Plaintiff Robert Lee Petry*

---

[55] 15 U.S.C. § 1692k(a)(1).

[56] § 1692k(a)(2)(A).

[57] § 1692k(a)(2)(B).

[58] § 1692k(a)(3).

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION</u>

STATE OF MINNESOTA           )
                                     ) ss.
COUNTY OF ANOKA             )

Pursuant to 28 U.S.C. § 1746, the undersigned Plaintiff, verifies, certifies, and declares as follows:

1.      I have read the Complaint, and to the best of my knowledge, information, and belief formed after reasonable inquiry, believe that all facts asserted therein are true;

2.      each cause of action asserted in the Complaint is supported by fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law;

3.      the instant action is not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, but is brought in good faith solely for the purpose of obtaining the relief sought in the Complaint; and

4.      any attached exhibit is a true and correct copy of the original, and except for appropriate redactions or annotations, has not been altered, changed, modified, or fabricated. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18 day of December, 2025.

Robert Lee Petry
Plaintiff